Jack Minckler v. Commissioner.
Minckler v. Commissioner
Docket No. 85013.
United States Tax Court
T.C. Memo 1962-122; 1962 Tax Ct. Memo LEXIS 188; 21 T.C.M. (CCH) 643; T.C.M. (RIA) 62122; May 21, 1962
Jack Minckler, pro se, Route 4, Albany, Ore. Leo K. O'Brien, Esq., and John D. Picco, Esq., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The respondent determined a deficiency in petitioner's income tax for the calendar year 1955 in the amount of $1,250.83, plus an addition to the tax under section 6651(a) of the Internal Revenue Code of 1954[1] in the amount of $312.71. The principal issue for decision is whether or not in 1955 the petitioner was an employee of or a partner with his brother, Jeff Minckler, in a business venture concerned with the buying and selling of livestock. Findings of Fact Some of the facts have been stipulated and are hereby found *189 as stipulated. The petitioner, currently a resident of Albany, Oregon, filed his individual income tax return for the year 1955 with the district director of internal revenue for the district of Oregon on November 12, 1957. Prior to 1955 petitioner resided in Yakima, Washington, and was engaged in the business of buying and selling sheep in the Yakima, Washington, and Blackfoot, Idaho, areas. Jeff Minckler, the petitioner's brother, was a practicing pathologist and the operator of a laboratory in Portland, Oregon, known as the Jackson Tower Medical Laboratory. Jeff had been engaged in the practice of medicine in Portland, Oregon, for approximately 16 years. In the early part of 1955 petitioner and his wife moved to Oregon and took up residence with Jeff on the latter's farm. The farm consisted of 22 acres and was known as Valmont Farms. Petitioner and his wife lived on the farm until the summer of 1955. Soon after petitioner arrived in Portland, he and Jeff decided to enter into the business of buying and selling livestock. However, due to petitioner's "unhappy financial experiences" in the past, Jeff was advised by his attorney to retain absolute control and sole ownership *190 of the proposed livestock operation. The livestock venture began to take shape in March 1955. On March 9, 1955, Jeff filed with the Clerk's Office of Clackamas County, Oregon, an "Assumed Business Name Certificate" which provided in part: KNOW ALL MEN BY THESE PRESENTS, That the real and true names and postoffice addresses of the persons conducting, having an interest in, or intending to conduct the business of buying and selling of livestock under the name or style of VALMONT FARMS at Milwaukie, County of Clackamas, State of Oregon, are the following, to-wit: JEFF MINCKLER, Postoffice address 5404 S. E. Lake Road, Milwaukie, Oregon. No other name appeared on the certificate. On the same day the aforementioned certificate was filed, Jeff also filed with the United States Department of Agriculture an "APPLICATION FOR REGISTRATION UNDER PACKERS AND STOCKYARDS ACT, 1921." The application stated, inter alia, that the name to be registered was "JEFF MINCKLER, dba VALMONT FARMS," that the character of the business was the buying of cattle, sheep, swine and horses, [2] that the status of the applicant was an individual, that Jeff Minckler, M.D. was the "Sole owner" and that Jack *191 Minckler was an "Employee." Thereafter on March 11, 1955, Jeff filed with the United States National Bank of Portland, Oregon, a document entitled: INDIVIDUAL OPERATING UNDER ASSUMED BUSINESS NAME AUTHORITY TO OPEN DEPOSIT ACCOUNT AUTHORIZED SIGNATURES The application contained the following language: The undersigned desires to establish with you a checking account in the name of Valmont Farms, 207 Jackson Tower, Portland, Oregon and hereby certifies that said name is the assumed business name used in the conduct of an unincorporated business, owned entirely by the undersigned, which assumed business name was recorded in book 7, page 347, Records of Assumed Business Names, in the County of Clackamas, State of Oregon, on the 10th day of March, 1955, and is still of record therein. Checks and orders for the payment of money withdrawing funds from said account may be signed by: Jack Minckler, Jeff Minckler or Jean Powloski. Checks, drafts, notes, bills of exchange and orders for the payment of money in favor of said *192 assumed business name may be endorsed by any one of the above and deposited with you for the credit of said account. Such endorsements may be made in writing or by a stamp without designation of the person so endorsing. The undersigned authorizes and directs you to pay and charge to said account checks, obligations and orders for the payment of money drawn on or payable at your bank when so signed, whether payable to the order of any of said signers or not; and further authorizes and directs you to receive deposits and conduct the said account in accordance with the instructions stated above, and stated on the authorized signature card filed with you by the undersigned. If any other person or persons become interested in said business as partners of the undersigned, or if said business shall be incorporated, the undersigned agrees to notify you promptly. The application was signed by Jeff Minckler. On March 14, 1955, Jeff wrote the following letter to K. I. Snider, the District Supervisor, Packers and Stockyards Branch of the Department of Agriculture, North Portland, Oregon: Dear Mr. Snider: This will advise you that Mr. Jack Minckler is my employee and agent and is authorized *193 to carry out any functions established by my application for registration d/b/a Valmont Farms in your hands. Yours very truly, /s/ Jeff Minckler, M.D. During this same period Jeff instructed his accountant to prepare a set of records for the Valmont Farms operation. Except for a short period during July and August 1955, the Valmont Farms' records, once established, were maintained by Jeff's accountant or by someone under his supervision. Petitioner contributed no funds to the Valmont Farms venture and after operations were commenced his only duty was to buy and sell livestock, principally sheep. Although the petitioner did not receive a specific amount as salary or compensation for his services to Valmont Farms, he was permitted to withdraw funds from the Valmont Farms' bank account for the personal use of himself and his family. The funds purportedly withdrawn by petitioner for his personal use were reflected on the Valmont Farms' records in an account designated "Operating Account - Jack Minckler." During the period between March 31, 1955, and October 31, 1955, there were charges to this account, in excess of credits, to the extent of $7,533.44. Included in this amount were *194 charges made subsequent to August 31, 1955, of $1,382.69, $36.08 and $23.50. Petitioner's association with the Valmont Farms venture ceased about August 1955 and petitioner went to live in Albany, Oregon. At this same time or shortly thereafter the Valmont Farms livestock venture itself terminated after having sustained a loss of approximately $25,000. On his income tax return for 1955 petitioner declared that he had no taxable income. In the statutory notice of deficiency sent to petitioner, respondent determined that the petitioner received compensation in the amount of $7,533.44. The respondent now concedes that of the aforesaid amount $1,325 is not taxable to the petitioner. Opinion The principal issue in this case is whether the petitioner was an employee of, or a partner with, his brother, Jeff Minckler, in the Valmont Farms livestock venture. Respondent's position is that petitioner was an employee of Jeff in the Valmont Farms venture and during the taxable year 1955 received the sum of $6,208.44 as salary or compensation from the Valmont Farms venture, which sum he failed to report as taxable income. Although the record is not entirely clear on this point, it is evidently *195 petitioner's position that he was a principal in the Valmont Farms venture and as a result of the loss sustained by the venture in 1955 he had no taxable income to report for that year. The petitioner has the burden of proving that he was not an employee of Jeff in the Valmont Farms venture. The record discloses, in substance, that there was no written agreement between petitioner and Jeff, that Jeff put up all the funds needed by the venture, and that various State and Federal registration applications, as well as bank applications, were submitted by Jeff on the basis that Valmont Farms was a sole proprietorship owned by Jeff with petitioner as its employee. In addition, Jeff's attorney testified that he advised Jeff that the proposed venture should be conducted as a sole proprietorship and that it was thereafter agreed by petitioner and Jeff that Jeff would provide the financing and petitioner would be the supervisory employee. Thus, it is clear that the venture was organized and conducted, at least in form, as the sole proprietorship of Jeff and that the petitioner was held out to the public as an employee of the venture. Petitioner testified and now contends, however, that the *196 actual agreement between him and Jeff was that the latter was merely to help him get started in the livestock business in Portland. Petitioner produced no evidence to corroborate his testimony, and as a result it is ipse dixit. Furthermore, Jeff denied that petitioner was his partner or that petitioner and he were joint venturers in the Valmont Farms venture. In view of the above, we are of the opinion that petitioner has not sustained his burden of showing that he was not an employee of Valmont Farms in 1955. To this extent, respondent's determination is upheld. We have previously found as a fact that petitioner ceased to be associated with the venture and moved to Albany, Oregon, about August 1955. For some unexplained reason, the records of Valmont Farms show that charges were made to petitioner's operating account after August 31, 1955. While the matter is not entirely free from doubt, we are of the opinion that the charges to petitioner's operating account appearing after August 31, 1955, are not includable within petitioner's income. The only remaining issue concerns petitioner's liability for the addition to the tax under section 6651(a). Petitioner's return for the calendar *197 year 1955 was filed on November 12, 1957. Said return was due on or before April 15, 1956. At the hearing, petitioner offered no explanation of his failure to file a timely return. Consequently, there is no evidence to show that the penalty was not properly added to the deficiency. The respondent's determination with respect to the addition to the tax is sustained. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. On May 26, 1955, the application was amended so as to provide that the character of the business was the buying and selling of cattle, sheep and goats.↩